Good afternoon, Your Honors. My name is Sean Gallagher. I'm a staff attorney for the Public Facilities Commission of the State of California. And I'm here, we are dividing our time this morning. Mr. Berman from PG&E will also offer argument this morning or this afternoon. The way we've got it divided up, I will talk for about 12 minutes, Mr. Berman will talk for about five minutes, and we'll reserve three minutes for rebuttal. One housekeeping matter before we start. The Court issued an order last week taking the cases that were consolidated that relate to a settlement between FERC staff and Duke off of today's calendar. And I want to note for you that yesterday the FERC issued an order approving California's settlement with Duke. I understand that the parties are reviewing the order, and I'll get back to you shortly on that. I think you gave it until January 7th to dismiss those cases or otherwise. Take care of the whole package, huh? I think that should take care of the Duke issues. We've still got the Reliant issues that we'll go forward with today, and we'll need an order from you. Okay. All right. The principal question in these cases is whether it was legitimate for FERC to transfer issues that were pending in an adjudicatory complaint proceeding. Speak up just a little bit louder. Thank you. As I said, the primary question in this case is whether it was legitimate for FERC to transfer issues that were pending in an adjudicatory complaint proceeding to which the petitioners here were parties into a non-public proceeding as to which our participation was denied. The fact that FERC labeled the proceedings that produced these settlements investigations is not dispositive. FERC does not have the discretion to simply label a proceeding an investigation without regard to its actual character and on such basis deny all rights of participation. The settlement proceedings here were not simply pre-decisionary investigations. They were rather adjudications which purported to definitively resolve the petitioners' rights to relief against Reliant. Well, they said a hundred times they weren't doing that. So it's very mysterious, but it's sort of a passing in the night problem here. It is a bit of passing in the night, and I can address that, Your Honor. There's two sets of sources of material that demonstrate that FERC transferred the consideration of these issues from the complaint proceeding to the investigations. First, I want to address what FERC says in the case. Kagan. If your own defendant has said that you lose because FERC has not transferred you, because nothing that happens in the other, in this proceeding, is going to have any impact on your, then you will have won. Is that right? If you issued a defendant that said nothing that affects us in this proceeding affects the other proceeding, and that the 50 or so million dollars in the settlements in this case is just sort of a baseline or is a cumulative of what we might get from the proceeding. It seems to me, and we'll hear what FERC says when they stand up, but that's what I understood them to be saying. They said it several times. I don't think it's that clear. I think if you begin to say All right. So if we made it clear, you will have won, and that will be the end of it. I think that's probably the right answer. But let me tell you why I'm concerned that that's not what FERC meant when it issued its orders. They do say in their brief that the scope of the refund proceedings was different than Just keep your voice up just a little bit. You know, we're just recording there, see, and we've got the cameras up here. So just, is that right? Just stay in the middle. Yeah. Stay in the middle and, you know. First goes on the computers. It goes nationwide. So you're on. You think I'm kidding you. I don't think you're kidding. Thank you. You get a disc out of it, too, out of your computer. I just found out about this. I better sit up straight, though. Go ahead. FERC does say in its brief that the temporal and substantive scope of the investigations is different than the refund proceeding or the remedy proceeding. And they say that the investigations addressed matters that were outside the purview of the refund proceeding. And one of the reasons they say that the cases addressed different matters is because they say in the brief, for example, at page 28, that the remedies for tariff violations were not available in the refund case. They say remedies for tariff violations were But there may be a dispute about what is in the refund case. In other words, you may have a dispute with them as to what their authority is in the refund case, and you may lose and you may come to court. But if nothing that goes on in this case has any influence on that, isn't that the end of the matter? Again, I think I would agree with Your Honor, but I remain concerned because of the language that FERC used in its refund case orders, where they said, we asked them. First, we asked them for relief for pre-October claims, and they denied it. We went to the court of this Court of Appeals, and the Court eventually issued an order saying, telling FERC to allow it to do additional discovery for just these claims, for just this time period and just these violations. When we went back to FERC with the 100 days of evidence, FERC issued orders in the refund case that said, we're not going to reconsider your pre-October claims in the refund case, in the remedy case, because, quote, the commission has already provided a remedy for any market manipulation that may affect transactions in the pre-October period. So what they said in the refund case was, your claims aren't here anymore, we're dealing with that in the investigation. And you may have an issue about that, but nothing in this case will affect that. That's what they said, that's what we could say, and that would be the end of it. Again, if you're – if an order were issued here, I think we'd have to agree that if the order were to say, don't worry about these cases because you've got all your rights in the other cases, and those rights include the right to additional relief for this period, I think we would say that. We would just say, whatever you have a right to in that proceeding, you have a right to. And there's nothing in this case that's going to affect that. Right. Now, there is language in the settlement order. FERC wasn't as clear as all that in the settlement – in its settlement orders in these cases either, however. I understand the Court could issue an order that made that clear. But in the Reliant 1 order, for instance, they do use language that does suggest that they weren't resolving anyone else's claims. We are at page 3 of the record. But that statement is essentially reversed in the July 28th rehearing order in the Reliant 1 settlement at page 131 of the record, paragraph 17, where the Court – where the FERC said that we remain free to pursue other claims for other conduct in other time periods, but not to pursue claims for the conduct addressed in the Reliant 1 settlement. In the Reliant 2 settlement, they say only that the settlement doesn't affect Reliant's obligations in the remedy proceeding. And whatever that means, it's clear that when FERC said that, they thought that Reliant didn't have any obligations in the remedy proceeding, because they said we're not going to look at these issues in the remedy proceeding anymore. In fact, they went further and said – Where did they say that? They said it in their October 16th order that's reproduced at page 170 of the addendum that we submitted with our reply brief, note 128. That's an October 16th, 2003 order. And they also said something similar in another order issued also on October 16th, 2003, on page 84 of the addendum, footnote 6. FERC said that reconsideration of the pre-October issues in the remedy proceedings would duplicate its efforts in the investigations. And that's a critical point. If the settlement's resolved only FERC's enforcement claims and had no effect on the if they had left our claims intact, there would be no duplication by conducting that review in the investigations. So when we looked – when we looked under the remedy proceeding shell, FERC said your claims are no longer here. And then when we looked under the investigation shell, FERC said, well, you can't litigate your claims here either. So the question is, where are our claims?  Could you tell me briefly – it's not directly relevant here, but the refund proceedings are under 206, and there's a refund date which is covered by the statute, which is October 2nd. And that presumably is where they're getting the idea that nothing before October 2nd can be in that proceeding, and you think otherwise. Well, that was FERC's original rationale for not providing relief prior to October 2nd. But in that original order on July 25th, 2001, when FERC denied that pre-October relief, they said – they said, we agree that they – well, they agreed that they could take retroactive action to provide relief for pre-October. And said they could do it in that proceeding. Well, they did. They said – Well, can they do it in that proceeding? Yes, they can. How? With the – if they find tariff violations in that proceeding, they can grant retroactive relief for that proceeding. Retroactive relief in that proceeding. There's nothing about the fact that it's a 206 proceeding that prevents them from providing retroactive relief. If they find a tariff violation – and there are many cases that say this. In fact, the Con Ed case that we cited to you in the briefs is one that says this. And the Lockyer case that was discussed earlier today is another case that finds that if there were tariff violations in a period prior to the filing of the complaint at FERC, if there are tariff violations in Lockyer because the reporting requirements weren't complied with, FERC can grant relief for those tariff violations. So this is not a novel proposition. In fact, FERC acknowledged it from the beginning that if they found tariff violations, they could grant relief in the refund case, in the remedy case, for those tariff violations. What they said at the time was that they hadn't found evidence of tariff violations. Well, they hadn't found evidence of tariff violations because they hadn't allowed us to do any discovery and they hadn't allowed us to put in any evidence. Well, we went to the Court in 2002 and asked for the right to do that discovery. That's what we spent the next several months doing, doing the discovery and accumulating the evidence of tariff violations for the pre-October period, among other periods. In March 2003, we submitted that evidence to FERC in the remedy proceeding. That evidence of – that included and was the primary focus of that evidence was tariff violations for the pre-October period. At the same time that we were collecting that evidence and preparing to submit it to FERC, FERC, in the middle of that 100 days evidence proceeding, announced the Reliant I Settlement. The Reliant I Settlement has to do with Reliant's admission of engaging in physical withholding on June 21st and 22nd, 2000, that's in the pre-October period, and they were trying to drive up prices in both the spot markets and the forward markets. We were looking for just that sort of – just that sort of evidence of market manipulation in the spot markets in the summer of 2000 when FERC issued the Reliant I Order. And that's another fact that suggests that what FERC did here in these investigations really is a sham, and it was intended to and had the effect of preempting our rights to an adjudication of those pre-October tariff violation claims in the refund case. Even though they said – even though they said definitively that nothing here is going to affect your – the refund case? Well, they didn't say that. They said it in their brief, but they didn't say it in their orders. They didn't say it in their orders. They did say it in their orders. They used language somewhat like that in the Reliant I Order at page 3 of the record in paragraph 10. I thought it was also in the Reliant II Order, too. In the Reliant II Order, all they say is that the settlement doesn't affect Reliant's obligations in the remedy proceeding. Frankly, I don't know what that means. It doesn't say that the California party's claims are preserved in the refund case as to Reliant. No, it says that they have whatever obligations they have in that proceeding. Now, you may have a dispute with them about the reach of that proceeding. They may say, no, it doesn't – you can't have a retroactive remedy of the kind that you're claiming. I mean, 206, it seems to me, could be subject to the reading that it either has to be a cutoff date and it has to be October 2nd, and if you disagree with them about that ultimately, you can come to court and argue about it. But if this proceeding has no effect on that, then why don't we just not worry about this proceeding? Again, if it were that clear, then we probably wouldn't be here. But it's not that clear. And part of the reason that it's not that clear is because in the same breath, or virtually the same breath, that Perks said that the settlement didn't affect Reliant's obligations in the refund proceeding, Perks said that Reliant had no obligations in the refund proceeding because, in the same language I quoted to you a few moments ago, that they said that they would no longer consider the refund proceeding. And which order was that in? There were two orders issued on October 16th, 2003. They were in the addendum, which I don't have with me. But they were not in the Reliant 2 investigation order. That's correct. They were not in the Reliant 2 investigation order. In the Reliant 2 investigation order, they used the other proceeding. They were in the other proceeding. Okay. So you may have a dispute with them in that other proceeding. But that doesn't answer this question. It doesn't answer the – it doesn't provide the complete answer to this question. There is other language in the settlements, though, that tend to suggest, and I think are intended to have the effect of precluding claims for the same conduct in the same time period. For example, at page 2 of the record, in paragraph 6, this is the Reliant 1 order. It says the settlement resolves all disputes within the purview of the commission. It doesn't limit that to the commission's enforcement disputes. In the same – on the same page in paragraph 9, it says that the agreement resolves any possibility that Reliant's actions may have resulted in rates that harmed customers. The Reliant 2 order has similar broad language that suggests that it's resolving all claims and not just for its enforcement claims. For example, at page 133 of the record in paragraph 2, it says the settlement resolves all outstanding issues with respect to Reliant arising from the investigations. The investigations covered this pre-October period. And similarly, at page 134 of the record in paragraph 14, it says that the agreement resolves the parties' allegations regarding physical withholding. And it says – and FERC at that point admits that its staff had reviewed the 100 days evidence that we submitted in the other proceeding. Again, properly understood, FERC's assertion in its brief that the so-called investigations address different matters than the remedy case is the basis for them to then claim that the settlements don't at least purport to resolve our claims in this case. FERC claims that the settlements are not subject to review because they were produced in these so-called investigations, and they cite Heckler v. Cheney and subsequent cases that limit review in cases regarding an agency's investigations. The case law is clear that it's not the label that the agency puts on a proceeding, but rather what the agency does in fact that determines the proper characterization of the proceeding, and thus what rights apply. For example, the Sullivan case that we cite in our brief says that the hallmark of an agency investigation is that no rights are adjudicated. The Aponte case of Circuit 284F3rd at 194 says that if any action of the commission alters the appellee's legal rights, then there's been an adjudication. And I submit that FERC's broad statements in the settlement orders itself, that they're resolving all disputes within the purview of the commission, alters our rights. If it doesn't directly adjudicate our rights in the remedy case, it at minimum raises the bar for us when we go back there, if we ever get a remand from this Court to address those claims in the remedy proceeding. FERC has made findings. Kagan. Kagan. I want to ask a procedural question about this case, about where we are in this case. Am I correct in believing that this current case is limited to the intervention question? That's correct. Because that's the order that the Court provided. But the briefs aren't so clearly limited to that at all. Well, I have two things to say about that, Your Honor. One is that neither FERC nor the interveners in their briefs objected to the scope of our briefs. That doesn't matter. We issued an order. That's you're absolutely right. And I would say, so the more substantive response is that the briefs discuss as much as intervention, they discuss reviewability and whether these cases are reviewable. And the reason for that is that whether intervention is appropriate here depends on what kind of case it is. And our position is that these cases are effectively adjudications. The case law is clear that the Court looks beyond the label that the agency put on the case and looks to see what happened. And when the Court looks to see what happened in these cases, it will see that FERC had the effect of altering our rights in the remedy proceeding, or at least attempting to alter our rights in the remedy proceeding. For that reason, the cases, because the cases alter our rights, they take on the characteristics of an adjudication, and thus intervention and all the rights of participation should be afforded to us, including review on the merits. And we don't expect you to provide review on the merits in this case. But what we request is that your order provides for us intervention that's consistent with a meaningful intervention that's consistent with the adjudicatory procedures that FERC was using to review these claims before they moved them from the complaint case to the investigation cases. You were planning on saving some time, were you? I guess I was. I'll stop now and let Mr. Berman go. Good morning, Your Honors. I'm Stan Berman of the law firm Hellerum & Whiteney McAuliffe. I represent Pacific Gas & Electric Company, and like Mr. Gallagher, I'm here today representing jointly the California parties. I'll note as a first preliminary matter that Pacific Gas & Electric Company, there seemed to be some concern in the earlier arguments about rates and rate impacts, and I just want to note that the rates were frozen during the crisis period. Rates were eventually unfrozen. Ratepayers have paid the higher charges that resulted from the manipulation during this period, and PG&E, like the California Public Utility Commission, the California Attorney General, and the others who are participating with us as the California parties, we are pursuing this on behalf of ratepayers to get recoveries for ratepayers. When you look at, for example, Reliant, who has settled for up to $50 million in their settlement, the sworn declarations that we put into the case showed that potentially up to $400 million or more is at stake in that proceeding. So there's a huge amount of value at interest. I want to also note, since you've ---- A huge amount of what interest? There's a huge amount of ratepayer value at interest. That is, if we are allowed to pursue that additional, as I've described it, $350 million or more, that makes a big difference to ratepayers, and the results will flow through to ratepayers. And that's really what Mr. Gallagher cares about and what I care about. That is, are we indeed allowed to continue pursuing that additional $350 million on top of the purported $50 million that they settled for? My view is that the intent of the commission was that we should not be allowed to pursue it. Mr. Gallagher cited ---- It may well be of the view that this relief is not available in the other proceeding because of the time period and the refund date. That may be their view. And you may disagree with that view in the other proceeding. But what I'm trying to understand is how does this proceeding ---- what you want to do is in the other proceeding cover this time period, right? Your Honor, I think these are the same proceedings, because they don't just raise the time period in the other proceeding. In the other proceeding, they say the only place where this issue can be pursued is this proceeding where we're standing right here. For example, Mr. Gallagher referred to footnote 6 of the ---- of one of the October 16, 2003 orders, which is at page 884 of the appendix. But isn't there something peculiar about us? I mean, shouldn't that be reviewed in that proceeding? Well, Your Honor ---- Rather than in this proceeding? Well, Your Honor, my answer is that they should have been consolidated, and I would agree that they should have been. We requested that, and our request was rejected. What is the status of the other proceeding, by the way? Your Honor, we're briefing the other proceeding. Briefs, initial briefs are due December 23rd, and oral arguments are April 12th and 13th in the other proceeding. What I'll tell you ---- And then there were several motions to consolidate which were denied. Yes, Your Honor. Yes, Your Honor. I want to ---- Did the parties agree that they should be consolidated? The other parties did not agree to consolidation. Your Honor, our ---- They objected to it or they didn't join it? They objected to consolidation. And, Your Honor, I would note that that ---- see, just to look at footnote 6, what it says there is that as an outgrowth of, among other things, the 100-day discovery proceeding, that's the other proceeding, the commission has initiated formal investigations and show-cause proceedings related to specific allegations regarding violations by market participants. What are they talking about? This proceeding. Thus, reconsideration of the issues in the current proceeding, that's that proceeding, as requested by PG&E, would duplicate the commission's other efforts. What did they just say? What they said is, is that when we get to the argument in the other case, they're going to say the issues were dealt with here. And in this case, they're telling us that we have no rights and that we should be pursuing the issue in the other case. If you clearly tell us that we have a right to pursue the issue in one of these cases, then maybe we're okay. But the fact is, is that the commission, through its orders, has created a situation where we're not allowed to pursue it in either place. What kind of right do you have under this statute? I was trying to figure that out. I mean, I know you're making due process arguments. The statute gives you the authority to make a complaint to the commission. My understanding is under 206, it's up to the commission whether to go forward. Is that right? You have no right to trigger a 206 hearing on your own. Your Honor, first of all, just to eliminate a confusion, there are two 206s. One is Section 206 of the Federal Power Act. That's what I'm talking about. It's Section 206 of the Federal Power Act, which permits complaints. The other is 385.206 of 18 CFR. And that's Section 206 of the commission's Rules of Practice and Procedure. And that's a pendant. I'm talking about the statute. You are, but I raised the other 206 because the other 206, which is appended as page A1 of our addendum, is the commission's rule on complaints, which specifies that a party may submit a complaint to the commission about any matter. Right. Then what? Do they have any obligation to go forward with it? Your Honor. Do they have any right to, quote, recover under it? Your Honor, they have a right to proceed and get a ruling when they submit a complaint. And that ruling is reviewable. And in the cases we've cited, Your Honor, for example, in the Consolidated Edison v. Ferk case, which was an October 2003 case, among the allegations in that case, and that was a case involving sales by suppliers in an electric market in the northeast, so not California, but another electric market that had problems. And in that case, they alleged that there were tariff violations by suppliers. And what the D.C. Circuit explained in analyzing the claim that there had been tariff violations is that there, it cited various precedent, including the town of Norwood case, for example, but it cited various precedent for the proposition that if someone comes to FERC with a complaint of tariff violation, that FERC has a duty to provide a refund remedy for that tariff violation or to provide a reasoned basis for failure to provide that relief. They remanded to FERC the issue of whether in that complaint proceeding, FERC had provided a reasoned basis for failure to provide the relief requested by the claimants in that case. And I'm trying to probe really whether this is a prosecutorial discretion sort of thing or whether there is some right that flows through to you to get the refunds if you're entitled to it. Well, Your Honor, if we were debating the merits rather than intervention, I would go into what a good reasoned basis is. FERC has never given us a reasoned basis. They've instead settled the ---- It's relevant to your due process issue, right? Your Honor, I believe that a reasoned basis is an exclamation consistent with the Federal Power Act and the policies inherent in that act for failure to give a full refund remedy. It's something that the D.C. Circuit has reviewed on a number of occasions. And ---- Your view is that you have something akin to a property right in the refund remedy. Yes, Your Honor. And that's true for the retroactive refund remedy, that is, for prior to the refund effective date that's normally established in Section 206 of the Federal Power Act. Section 206 of the commission's rules gives the right to file a complaint about things that are broader than Section 206 of the Federal Power Act. And once you've filed that complaint, FERC has to adjudicate it. And if you've alleged a tariff violation, then FERC can ---- I'm having ---- as you can tell, I'm a bit of a novice about the statute, but I'm not bad at reading statutes. And I'm trying to understand where in the statute is that right to an adjudication of a traffic ---- tariff violation. Earlier today, it was noted that that might be in district court, maybe. But where is it before FERC? Where in the statute do you find that? That they have to render a ruling? I have tariff violation, as opposed to a failure to have a reasonable rate and so on. Your Honor, Sections 205 of the Federal Power Act provides that rates must be just and reasonable and consistent with tariffs on file at the commission. And so it flows from Section 205 of the Federal Power Act that there's a right to seek relief if there's a violation. Section 309 of the Federal Power Act gives the commission the authority to do such acts as are necessary in order to carry out ---- It would be a proceeding under 205. But this proceeding is under 206, the one we're talking about. Which proceeding, Your Honor? The one that you want to be in, but aren't. Am I wrong about that? Yes, Your Honor. The proceeding that we want to be in, but aren't, was brought under Section 206 of the commission's rules. It requested relief. Okay. FERC has repeatedly characterized it as being limited to the relief available under Section 206 of the Federal Power Act after a refund effective date. But that's never how the relief has been limited. In fact, from the earliest days of the case, we have requested broader relief. And I would point, Your Honor, for example, to in the filings that are attached to the addendum are some of the earliest filings that were made in that case, showing the relief that was requested in that case. For example, in a September 23, 2000 filing, at A209, there's a section, the commission should order that it will require retroactive refunds if sellers fail to follow their tariffs or California market rules. So in that proceeding, we ask for those retroactive refunds. In that proceeding, the commission issued orders. For example, on October 19, 2000, the commission issued an order saying this is a contested, on the record, adjudicatory proceeding, and we remind the parties of that. You can't come to us in an ex parte fashion. You have to follow the rules, because we have a formal proceeding now under the commission's rules. So we made a request. There was a formal commission proceeding.  They have to give an answer. And once they give the answer, if we don't like it, we have the right to challenge it. And I guess if when we challenged it, they could argue that they've given a reasoned basis for failure to provide that relief. But the answer that they primarily have now, since now everyone knows there were tariff violations in this period, so the argument that they can only give relief if there's tariff violations is by the wayside. Everyone knows there were tariff violations. So the only reason why they're failing to give relief here is because they said, as in footnote six that I referred to in the October 16, 2003 order, they said we're dealing with the issue, not here, but in those nonpublic proceedings. I also note that you cautioned, counsel, that we have to follow orders of the court, and it was in the August 21, 2002 order of this Court, that remanded to FERC the issue of taking discovery. Well, that order isn't very clear. Your Honor, if you don't think it's very clear, I won't get very far with the argument, but I would note that it remanded the issue of taking discovery. But it didn't say of what period. And then FERC determined the period. And in the November. It didn't say the period. So it didn't remand for discovery for that period. It did not specify in the order the period. It wasn't supposed to stay in that proceeding or anything like that. Your Honor, it said that a report would be issued and would have to be – and that FERC would report back to the commission. So I guess you could say that if FERC had wanted to splinter it off into another proceeding, but then offer a report on both proceedings, in which both proceedings would then be sent back to the Court of Appeals, that would be one way of approaching that order. But to say that it would take some of what was remanded, put it into another proceeding, and then not send it back to the commission, that's, in my view, not consistent with what the Court ordered. Anything else? Well, I think my time is up. And I'm – unless you have any further questions, I will stop right now, Your Honors. All right. May it please the Court, Robert Solomon for the FERC. This case is very narrow. Petitioners have offered a long preview of coming attractions for the refund proceeding that is actively being briefed now. Did you oppose consolidation? Yes, we did. Wouldn't it make a lot more sense to have these cases, these two cases sided together? No, I do not think so. Why not? I think the refund proceeding is already a gargantuan adjudication. The Court has responded to over 100 petitions for review. We had to participate in two case management conferences with Judge Levy in San Francisco. And what the Court has done is to sever out certain – And then you have a case, which you are talking about here, and the ones that you're – that Judge Levy was involved in. That's what that case is? The – I'm now understanding what's happening. Correct. Sometimes there are advantages to having separate investigative proceedings and sometimes there are advantages to having separate – But here we have the strange business about what – where – what's in which case. And it seems thoroughly inefficient to me – I really – I don't know what's going on in the other case. It's very hard to figure out what the answer is to this one. I don't think so, Your Honor. I think the cases stand separate and distinct. I think this is a matter that has long been decided. The courts in a number of orders – So it's your position – so let me ask you what I asked him. If we were issued an opinion that simply said nothing that happened in this case – in this investigation and nothing in the settlement is going to affect anything that's – that's in those re-front proceedings, you would be happy? Of course. And if, for example, you took the position in that case that they – that nothing before October 2nd is relevant because of the refund date, and you could do that, you could take it as a legal position, but you could not take the position and because we've already settled that. That would not be a permissible position in the other case. Correct. We're not engaging in a shell game here or a sham or a transfer, as Petitioners have indicated. As the commission orders State repeatedly, I think Your Honor, indicated that the FERC must have said this 100 times. I'm now saying it for the 101st time, that these investigative proceedings, the settlement and resolution of those investigative proceedings, have no impact whatsoever. But you do say that they absolutely – you say both things in those orders. You say on the one hand that they have no impact on the re-front proceeding, and you also say that there's a final settlement of everything having to do with this time period, the second one. No. What the commission did in these orders were to resolve certain identified investigative proceedings. The commission did not absolve reliance of all responsibility for all activity prior to October 2000. What the commission did was to enumerate certain of the investigative proceedings it had commenced. And in approving the settlements, it resolved two days of withholding in June of 2000. It resolved an investigation into physical withholding. And the commission resolved an investigation into anomalous bidding behavior by reliance during this time period. But if somebody – but if they were to claim that those same – that same behavior deserves a remedy in the other case, I understand your position may be that it doesn't. But if they were to claim that it does, you might say there are legal reasons it doesn't, but you may not say we've already resolved that. Yes. Because the refund proceeding was intended to be a separate and distinct proceeding from the investigative proceedings. Meaning what? It covers a different time period? It covers different issues? Or these people are – or the reliance is going to have to pay twice if they lose? It means the first two things that Your Honor mentioned, that it's different time periods and an entirely different scope of analysis. The issue before the court on review of the refund proceeding is whether the commission erred in limiting relief to the period prospective from October 2, 2000. But they're saying that isn't so. They're saying that they – their legal position, as I understand it, in the other case – this is why I don't understand why we don't have the two cases together – but they're representing that their position in the other case is that it's actually at least – that there is retroactive relief available, that they did complain for it, and that they're entitled to it. Your legal position, as I understand it, is that that – in the other case, is that that isn't true. Is that right? Correct. But the scope of analysis is different. In the refund proceeding, the scope is generic. The commission is adopting a revised mitigated market clearing price that applies across the board. In these investigative proceedings, the commission is reviewing specific supplier conduct and determining whether that specific conduct violates the tariffs under which those suppliers have been proceeding. So it's not simply a matter of – So when they try to make their legal argument in the other case, which is that you're wrong about that, and that, in fact, they ought to be able to raise these specific investigative issues in the other case, and that they ought to be able to raise the pre-October time period, you can say whatever – you will have a legal position about why they can't do it, but you're not going to say we've already settled that, because this thing can have no impact on the refund. Is that where we are? Correct. This thing has no impact on the refund proceeding. Not only because it's your legal position that they're covering different things, but because you have precluded yourself from taking the position that you have settled some part of that earlier case. That is correct. In this proceeding, all the commission did was to resolve specific individual proceedings. If the parties and if the commission want to negotiate a global settlement that resolves entirely all issues for a particular time – It includes these same incidents and these same problems. Reliant is just going to have to pay twice. Reliant might have to pay twice. And I want to differentiate the Reliant case from the Duke global settlement that was just approved yesterday. In that case, the parties were explicit that in settling for $200 million, Duke was resolving and negotiating away all claims that might arise during all time periods concerning all types of conduct. Okay. Now, were those negotiations part of the negotiations that arose out of the other refund proceedings with Judge Levy and so on? Is that how you got to that settlement? I.e., were you treating these things together? Did you hear what I treat separately? That was not explicitly part of the case management proceedings. But it was a global settlement, meaning that everything – not just these investigative cases, but also the refund proceeding cases. And, frankly, I hope other petitioners follow Duke's lead and adopt global settlements that avoid all of this confusion as to the line of demarcation. But wouldn't it make way more sense to take this case, move it over to the other place where you're in settlement negotiations, where we have Judge Levy who knows what's going on, and see if you can mediate that? I don't think so. First, this Court has denied consolidation several times. Second, the adjudication is large, onerous, and is still continuing before the commission concerning the precise calculation of the mitigated market clearing process. You managed to sell everything. Excuse me? In the Duke case, you did manage to sell everything. Yes. And I hope other suppliers and I hope the California parties are able to do so in other cases. My understanding – But it's going to be harder if we have two different cases running around in this Court separately. I don't know if it's harder or if it's any easier. I know that the California parties have been able to enter into global settlements not just with Duke, but with other suppliers. And the advantage of such a settlement is that it negates any of this confusion and hopefully results in the withdrawal of petitions for review. Frankly, I believe that there are some instances in which it is helpful to have a separate, standalone investigation. And I believe the facts of the Reliant 1 case actually bear that point out. In this case, there weren't any formal interveners. The commission was able to issue data requests. Reliant was very cooperative. Reliant brought to the commission's attention the fact of the withholding of capacity during these two days in June of 2000. And the advantage of having a smaller investigative proceeding is that it makes it much easier for the commission. It makes it much easier for the parties to negotiate settlements of those proceedings. Can I ask another question? Mm-hmm. How do you call this an investigative proceeding? Are you investigating preliminary to deciding? I mean, suppose they hadn't settled. What would have happened? It is an investigative proceeding. And ultimately you're trying to decide whether to bring a complaint under 205 or 206 or something? Yes. We've unfortunately blended together the notions of investigations and enforcement. What the commission does is undertake a fact-finding investigation. That investigation may lead to an enforcement proceeding. Which would be under what section of the statute? The enforcement proceeding would presumably arise not under Section 206 of the Federal Power Act, but under two sections that have not received any discussion this morning. Those would be Sections 307 and 309 of the Federal Power Act, which are found at 16 U.S.C. Sections 825F and 825H. Those are sections that detail the commission's investigative authority and give the commission authority to engage in any or all acts as the commission deems necessary or appropriate. But you would have – is there – do the regulations provide for a full hearing if there's no settlement? Not necessarily. Not necessarily. The relevant sections for a commission investigation are found at 18 C.F.R. 1B. Those provisions indicate that the form of the investigation, the form of the enforcement proceeding can take any number of different formal or informal public or nonpublic But I find it hard to believe that Reliant could be required to pay, not in a settlement, but with an order, you know, $25 or $50 million and not have some – Reliant now, I'm not talking about intervenors – and not have some due process rights to a formal adjudication. So I assume that somehow or other, down the line, leads to a formal adjudication. It very well could lead to a formal adjudication. At that point, do the intervenors have a right to come in? Are you basically acting as prosecutors at this point and you're settling something prior to a formal proceeding in which people could intervene later? Exactly, Your Honor. Indeed, the commission is acting in a prosecutorial manner. And the sections that I've referred to have been the focus of this Court's attention before in the Friends of the Cowlitz case. That's the case that found that we have unreviewable discretion to commence an investigation. Okay. And I'm asking a different question. Eventually, if this case didn't settle and there wasn't an adjudication, then could these intervenors intervene? Do you have any case file like that? Any regulations or anything? Sure. I think the intervenors probably could. It would depend upon whether the commission initiated an investigation or whether the commission initiated an adjudication. There are regulations that attach to adjudications. Those are found at 18 C.F.R. 385.214 is the specific regulation that deals with interventions. So ordinarily, an investigation is an investigation. It leads to something. Right. Like an enforcement proceeding. Yes. Okay. In this case, the investigation did not lead. Because there was a settlement. Because there was a settlement. A settlement with the general counsel of the NLRB or whatever. Yes. But I do want to point out that the — even though this led to a settlement and not to a formal enforcement proceeding and adjudication, the California parties have not been shut out of the process. Rather, they have been able to participate and actually participate quite fully and I'm glad Your Honor asked for some clarification as to the scope of this proceeding. The scope of this proceeding concerns intervention. Sure, the commission denied, as a matter of its discretion, formal intervention to Petitioners as parties. But the California entities were fully able to participate and fully able to be heard in a meaningful manner consistent with the Court's August 2002 order. The California parties, as well as other parties, submitted voluminous evidence concerning potential market manipulation. The California parties met with commission staff to discuss their submissions. And indeed, in this case, even though intervention, the formal status of party was denied, the commission considered the various arguments raised in the Reliant I series of orders. The commission laid out in its intervention order and the rehearing order all of the arguments presented by the California parties. And in the Reliant II proceeding, based upon this October 16, 2003 order that Petitioners have referenced, the commission decided to treat the motion for intervention as a motion to submit comments, which is similar to what it does in any settlement proceeding. If you can ---- So the settlement is for $25, $50 million. What's happening to that money? Hopefully, that's already been dispersed to California ratepayers. That's one of the big advantages of having a stand-alone investigation and having a less comprehensive, gargantuan case. My understanding is that the California attorney general ---- But your ultimate position is that if their position is that they're entitled to ---- in fact, the California ratepayers were entitled to $400 million, and you settled for $50 million. Your position is that the $350 million is just never going to be seen again. I understand your position is that you settled and maybe they were entitled to more and so on. But they claim a right, which they claim to be a property right, to the $350 million. That's correct. I mean, Duke was in exactly the same position as Reliant as ---- Yes, Duke was in exactly the same position as Reliant. Duke executed a settlement for only $2.5 million of pre-October 2nd, 2000 liability. But because of precisely all of the concerns, all of the ambiguities that Your Honor has referred to, Duke decided to enter into a global settlement for much, much more. There is ---- So should we be sending this case to a court mediator? Excuse me? Should we be sending this case to a court mediator to see if they can help you do a global settlement of this issue? I don't think so. But the mediator in the refund proceeding has made it very clear, Judge Levy has made it clear, that he is available. The court's mediation office has made it quite clear that it is very willing to intercede if necessary to try to help negotiate. Why did you say I don't think so, then? Why did you say no? You're going to be saying yes now. I thought you meant this panel in response to this proceeding. Yes. Should we? Would it be wise for us to give you some time to go? And what we do in these instances is we can't rush you to do it, but we can give you some time to do it before we proceed with the case. I don't know exactly what the parties are undertaking. My understanding is that the parties have been very vigorous in pursuing settlements and have been quite able and quite adept in striking those settlements. It's not just Duke, but I believe other suppliers have. I don't know what Reliant has done, but. But FERC would not be a party to those proceedings? FERC would, if it resolves a FERC-initiated investigation, or an adjudication for that matter, presumably the commission would be a party. The commission staff was a party to these settlements and these proceedings, and commission staff was a party to this global Duke settlement that the California parties have entered into. If there is a settlement, as here in these investigations, the money is returned faster to California rate payers. And as we see from the Reliant 1 case, the type of disclosures of wrongdoing, the withholding during these two days, comes to light much quicker. Sure, the commission can have one huge mega adjudication. The commission can have multiple adjudications. The commission can have some investigative proceedings and one or some adjudications. But that is a matter that is entrusted to its prosecutorial discretion, and it is entitled to some deference in choosing the type of procedures for trying to get to the bottom, to determine facts, to reach a resolution of issues, to bring the parties together. And it believes it's done so quite well in these cases. Thank you, Your Honor. Thank you. All right. I think you, do we have any time left? Your Honor, if I may, just as a couple of points, or if you tell me to run out of time, I'll accept that. Well, okay. We'll give you a minute, huh? I'd like an answer to your reaction to the mediation. Your Honor, I think that a mediation, an order in this Court, ordering us to mediation is not an order. You are not ordering a mediation. It would simply cross the middle for you to explore the question of mediation and let us know whether you want to do it. I don't think that's what we want. We are already having discussions with Reliant, and it's not necessary for such an order to produce those discussions. What I think we would ask for is an order consolidating these cases with the refund case appeals, and we could ensure that our claims didn't get lost in one bucket or the other, but somewhere they were going to be addressed. There was going to be a forum. I'd address for a moment the question of prosecutorial discretion. You asked whether there was prosecutorial discretion in first responding to a Section 206 complaint. The answer to that is no. They do have to follow the regulations and actually provide an answer that's consistent with their procedures. They have to give you an answer on the complaint proceeding. They do have some prosecutorial discretion. And I think the New York Department of Law case lays this out most clearly. There are at least three species of cases. One is the pure fact-finding investigation where nothing is determined, and that's actually what FERC said it was going to do when it issued these investigations. Oftentimes a report in such an investigation is issued, and the report is later used in an adjudication. And if FERC had done that, we'd have a very different case. The second kind of case is an enforcement action. And in the enforcement action, there is some case law to the effect that FERC doesn't have to provide process to parties other than the Respondent. But once FERC or any administrative agency alters the rights of parties other than the subject of the investigation, then the case takes on the character of adjudication, and then the agency has to give process to those other parties whose rights are altered. And that's established by, for example, the New York Department of Law case itself, which provides that the reason that it extends the Heckler v. Cheney nonreviewability exception to the decision to settle an investigation is precisely because no legal rights were decided in that case. With that, Your Honor, if there's no further questions, I close. All right. Thank you. And we'll stand submitted. We'll call the last case, Public Utility District Number 1. Oh, I'm sorry. We already did that one. Yeah. Well, here it is. Public Utility Commission of the State of California v. PG&E. Actually, versus Federal Energy Regulatory Commission. You know, let's try for 20 minutes each side, huh? 30, I think. Well, let's try for 20. 30. We cut them back to 30? Oh, you've got 30. All right.   We're going to call it a day. Just compromise 25. It's a deal. All right. It's getting late. And we've got to get ready for another big calendar tomorrow.
judges: Browning, Pregerson, Berzon